Janet Crepps*
David Brown*
Center for Reproductive Rights
120 Wall Street, 14th Floor
New York, New York 10005
jcrepps@reprorights.org
dbrown@reprorights.org
Tel: (917) 637-3600

Christopher A. LaVoy (AZ #016609)
LaVoy & Chernoff, PC
201 North Central Avenue, Suite 3300
Phoenix, Arizona 85004
cal@lavoychernoff.com
Tel: (602) 253-3337

Attorneys for Plaintiff Isaacson

*Application for admission *pro hac vice* filed

Susan Talcott Camp*
Alexa Kolbi-Molinas*
American Civil Liberties
Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
akolbi-molinas@aclu.org
tcamp@aclu.org
Telephone:  (212) 549-2633

Attorneys for Plaintiffs Clewell and
Miller

*Additional Co-Counsel listed on
signature page*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul A. Isaacson, M.D.; William Clewell, M.D.; Hugh Miller, M.D., <br><br> Plaintiffs, <br><br> vs. <br><br> Tom Horne, Attorney General of Arizona, in his official capacity; William (Bill) Montgomery, County Attorney for Maricopa County, in his official capacity; Barbara LaWall, County Attorney for Pima County, in her official capacity; Arizona Medical Board; and Lisa Wynn, Executive Director of the Arizona Medical Board, in her official capacity, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** |

Plaintiffs, by and through their undersigned attorneys, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following:

**I. PRELIMINARY STATEMENT**

1.      Plaintiffs bring this civil rights action under the United States Constitution and 42 U.S.C. § 1983 to challenge the constitutionality of a provision within recently enacted Arizona House Bill 2036 (hereinafter "HB 2036" or "the Act") that bans abortions beginning at 20 weeks of pregnancy.  HB 2036, 50th Leg., 2d Reg. Sess. § 7 (Ariz. 2012) (creating A.R.S. § 36-2159).  This provision is scheduled to take effect August 2, 2012.  A copy of HB 2036 is attached hereto as Exhibit A.

2.      The ban on abortions beginning at 20 weeks ("20 week ban" or "ban") violates the substantive due process rights of women seeking abortions.  Under clearly established United States Supreme Court precedent, the State of Arizona cannot ban abortions prior to viability.  With its narrowly defined medical emergency exception, the ban also unconstitutionally endangers women's health.

3.      Plaintiffs seek a declaration that the 20 week ban is unconstitutional and preliminary and permanent injunctive relief prohibiting its enforcement as to previability abortions.

**II.  JURISDICTION AND VENUE**

4.      This court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

5.      Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

6.     Venue in this Court is proper under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this action occurred in this district and the Defendants are located in this district.

**III.  PARTIES**

   **A. Plaintiffs**

7.     Plaintiff Paul A. Isaacson, M.D., is a board-certified obstetrician and gynecologist.  He is licensed to practice in Arizona and provides services at Family Planning Associates, a private medical practice located in Phoenix.  Dr. Isaacson provides a wide range of reproductive health care services, including abortions.  Dr. Isaacson regularly provides abortions before fetal viability ("previability abortions") at and after 20 weeks gestational age.   Dr. Isaacson sues on his own behalf and on behalf of his patients seeking previability abortions at and after 20 weeks.

8.     Plaintiff William Clewell, M.D., is a board-certified obstetrician and gynecologist with a subspecialty in maternal-fetal medicine.  He is licensed to practice in Arizona, where he provides a wide range of prenatal care, high-risk pregnancy management care, and labor and delivery services for women with high-risk pregnancies at Banner Good Samaritan Hospital in Phoenix.   In particular situations, where the pregnancy threatens the woman's life or health; where she is experiencing pregnancy failure; and/or where the fetus has a severe or lethal anomaly, he performs a previability pregnancy termination at or after 20 weeks.  Dr. Clewell sues on his own behalf and on behalf of his patients seeking previability pregnancy terminations at and after 20 weeks.

9.     Plaintiff Hugh Miller, M.D., is a board-certified obstetrician and gynecologist with a subspecialty in maternal-fetal medicine.  He is licensed to practice in Arizona, where he provides a wide range of prenatal care, high-risk pregnancy management care, and labor and delivery services for women with high-risk pregnancies

at Tucson Medical Center in Tucson.  In particular situations, where the pregnancy threatens the woman's life or health; where she is experiencing pregnancy failure; and/or where the fetus has a severe or lethal anomaly, he performs a previability pregnancy termination at or after 20 weeks.  Dr. Miller sues on his own behalf and on behalf of his patients seeking previability pregnancy terminations at and after 20 weeks.

**B. Defendants**

10.     Defendant Tom Horne is the Attorney General of Arizona.  The Attorney General provides the Arizona Medical Board with legal counsel, including providing assistance to the Board to interpret its obligations and enforcement responsibilities under new legislation.  *See* A.R.S. § 41-192.  The Attorney General also represents the Board as its legal counsel and defends its decisions to revoke or suspend physicians' licenses in appeals before the state courts.  *Id.*; *see also id.* §193.  Mr. Horne is sued in his official capacity.

11.     Defendant William (Bill) Montgomery is the County Attorney for Maricopa County, which encompasses the City of Phoenix.  He has authority to prosecute criminal violations of the 20 week ban.  *See* A.R.S. § 11-532(A).  Mr. Montgomery is sued in his official capacity.

12.     Defendant Barbara LaWall is the County Attorney for Pima County, which encompasses the City of Tucson.  She has authority to prosecute criminal violations of the 20 week ban.  *See id*.  Ms. LaWall is sued in her official capacity

13.     Defendant Arizona Medical Board is the entity responsible for enforcing disciplinary sanctions against physicians who violate the challenged provisions.

14.     Defendant Lisa Wynn is the Executive Director of the Arizona Medical Board.  The Board may delegate much of its disciplinary authority to the Executive Director.  *See* A.R.S. § 32-1405.  Ms. Wynn is sued in her official capacity.

**IV.  THE CHALLENGED PROVISIONS**

15.     HB 2036, which contains 12 distinct sections, imposes a number of restrictions on the provision of abortion services.  Several of these provisions do not take effect, however, until the Department of Health Services completes rulemaking.  The 20 week ban is not subject to rulemaking and is scheduled to take effect on August 2, 2012.

16.     The ban provides:

> A.  Except in a medical emergency, a person shall not perform, induce or attempt to perform or induce an abortion unless the physician or the referring physician has first made a determination of the probable gestational age of the unborn child.  . . . .
>
> B.  Except in a medical emergency, a person shall not knowingly perform, induce or attempt to perform or induce an abortion on a pregnant woman if the probable gestational age of her unborn child has been determined to be at least twenty weeks.

HB 2036 § 7 (creating A.R.S. § 36-2159).

17.     "Gestational age" is defined as "the age of the unborn child as calculated from the first day of the last menstrual period of the pregnant woman."  A.R.S. § 36-2151(4) (set forth as existing law in HB 2036 § 3).

18.     The only exception to the 20 week ban is for a "medical emergency" defined as:

> a condition that, on the basis of the physician's good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function.

A.R.S. § 36-2151(6) (set forth as existing law in HB 2036 § 3).

19.     Violation of the 20 week ban is a Class 1 misdemeanor, punishable by up to six months imprisonment.  HB 2036 § 7 (creating A.R.S. § 36-2159(C)); A.R.S. § 13-

707(A)(1).  A knowing violation of the 20 week ban also subjects a physician to discipline for unprofessional conduct, which can result in license suspension or revocation.  HB 2036 § 7 (creating A.R.S. § 36-2159(D)).

**V. STATEMENT OF FACTS**

20.     Under current Arizona law, "[a] physician shall not knowingly perform an abortion of a viable fetus unless: . . . the abortion is necessary to preserve the life or health of the woman."  A.R.S. § 36-2301.01(A)(1).  "'Viable fetus' means the unborn offspring of human beings that has reached a stage of fetal development so that, in the judgment of the attending physician on the particular facts of the case, there is a reasonable probability of the fetus' sustained survival outside the uterus, with or without artificial support."  *Id.* § 2301.01(C)( 3).

21.     Although the point at which an individual fetus may attain viability varies, no fetus is viable at 20 weeks.

22.     An abortion ban that takes effect at 20 weeks will prohibit some previability abortions.

23.     The vast majority of abortions performed in the United States and in Arizona occur in the first trimester of pregnancy.  Only a small fraction of abortions are performed at or after 20 weeks.

24.     Women obtain abortions at or after 20 weeks for a variety of reasons, including that continuation of the pregnancy poses a threat to their health, that the fetus has been diagnosed with a medical condition or anomaly, or that they are losing the pregnancy ("miscarrying").

25.     For women who seek abortions because continuation of the pregnancy poses a risk to their health, these risks can come from exacerbation of a pre-existing medical condition or can be caused by a condition related to or brought on by the pregnancy itself.

26.     In many instances, although the threat to the woman's health is serious, and may become more so over time, it does not pose an immediate or severely time-sensitive threat, such that it constitutes a medical emergency for purposes of the exception to the 20 week ban.

27.     The definition of medical emergency applicable to the 20 week ban comes from existing Arizona law which permits physicians to waive a mandatory 24 hour delay for women seeking abortions if the woman is experiencing a medical emergency.  A.R.S. §§ 36-2151(6) (definition of medical emergency), 2153 (requiring, except in medical emergencies, a 24 hour delay between receipt of state-mandated information and an abortion), and 2156(A)(1) (requiring, except in medical emergencies, a delay between the performance of an ultrasound and an abortion).

28.     In the context of a mandatory delay, the definition of "medical emergency" delineates when an abortion does not have to be *delayed* by an otherwise mandated 24-hour waiting period.  In the context of the abortion ban in HB 2036, however, the definition of "medical emergency" delineates whether an abortion may be obtained *at all*—even a previability abortion needed to preserve a woman's health.  Limiting the reason that a woman may obtain a previability abortion to narrowly defined medical emergencies places significant burdens on the health of some women seeking abortion care.

29.     As a result, under HB 2036, a woman seeking abortion care at or after 20 weeks due to a medical condition that threatens her health may either be prohibited from doing so altogether, or may have to delay the procedure until her condition worsens to the point where immediate action is necessary, and the abortion therefore meets the medical emergency exception's temporal requirements.

30.     For these and other reasons, HB 2036 endangers women's health.

31.     Many women undergo prenatal testing at approximately 18 to 20 weeks gestational age.

32.     As a result of this testing, some women will learn that their fetus has a medical condition or anomaly that is incompatible with life or that will cause serious, lifelong disabilities.  Some of these women will choose to terminate the pregnancy.

33.     Under HB 2036, however, women wishing to have a previability abortion for these reasons at or after 20 weeks will be unable to do so.

34.     Although House Bill 2036 sets forth legislative findings and purposes asserting that the 20 week ban is supported by "the documented risks to women's health and the strong medical evidence that unborn children feel pain during an abortion at that gestational age," HB 2036 § 9(B)(1), neither of these assertions – even if true – nor any other asserted justification could support a ban on previability abortions.

**VI. THE IMPACT OF THE BAN ON PLAINTIFFS AND THEIR PATIENTS**

35.     By prohibiting all abortions beginning at 20 weeks except those that come within the Act's narrow definition of medical emergency, HB 2036 will harm Plaintiffs' patients by denying or delaying access to abortions, including abortions they seek to preserve their health.

36.     As a result of the 20 week ban, some women who find out about fetal conditions or anomalies close to or after the 20 week cutoff may have inadequate time to obtain additional information and to weigh their options of carrying to term or seeking a previability abortion before they are foreclosed from obtaining an abortion.

37.     Each of these harms constitutes irreparable harm to Plaintiffs' patients.

38.     The Act presents physicians with an untenable choice:  to face criminal prosecution for continuing to provide abortion care in accordance with their best medical judgment, or to stop providing the critical care their patients seek.

## FIRST CLAIM FOR RELIEF

### (Substantive Due Process)

39.     Plaintiffs reallege and hereby incorporate by reference Paragraphs 1 through 38 above.

40.     The ban on previability abortions at or after 20 weeks, except in narrowly defined medical emergencies, violates the substantive due process rights of Plaintiffs' patients, guaranteed by the Fourteenth Amendment, by banning previability abortions and endangering women's health.

## INJUNCTIVE RELIEF

41.     Plaintiffs reallege and hereby incorporate by reference Paragraphs 1 through 40 above.

42.     Plaintiffs' claim meets the standard for injunctive relief.  Plaintiffs and their patients do not have an adequate remedy at law and they will suffer immediate and irreparable injury if the 20 week ban is permitted to go into effect.  Moreover, Plaintiffs have established a strong likelihood of success on the merits, the balance of equities tips strongly in favor of Plaintiffs and their patients, and the public interest will be served if Defendants are enjoined from enforcing the 20 week ban.

## ATTORNEY'S FEES

43.     Plaintiffs reallege and hereby incorporate by reference Paragraphs 1 through 42 above.

44.     Plaintiffs are entitled to an award of reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

1.     Issue a declaratory judgment that the 20 week ban, to be codified as A.R.S. § 35-2159, is unconstitutional as applied to previability abortions, under the Fourteenth Amendment to the United States Constitution and in violation of 42 U.S.C. § 1983;

2.     Issue a preliminary and permanent injunction restraining Defendants, their employees, agents, and successors from enforcing the 20 week ban as to previability abortions.

3.     Issue an order prohibiting Defendants, their employees, agents, and successors from bringing enforcement actions for previability abortions performed while a Temporary Restraining Order, Preliminary Injunction, or Permanent Injunction are in effect against the 20 week ban;

4.     Award Plaintiffs their reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

5.     Grant such other or further relief as the Court deems just, proper and equitable.

RESPECTFULLY SUBMITTED this 12th day of July, 2012.

LAVOY & CHERNOFF, PC

By /s/ Christopher A. LaVoy
Christopher A. LaVoy (016609)
LaVoy & Chernoff, PC
201 North Central Avenue, Suite 3300
Phoenix, Arizona 85004
cal@lavoychernoff.com
Tel:  (602) 253-3337

Janet Crepps*
David Brown*
Center for Reproductive Rights
120 Wall Street, 14th Floor
New York, New York 10005
jcrepps@reprorights.org
dbrown@reprorights.org
Tel: (917) 637-3600

Janie F. Schulman*
Nancy R. Thomas*
Morrison & Foerster LLP
555 West Fifth Street
Los Angeles, California 90013-1024
jschulman@mofo.com
nthomas@mofo.com
Tel: (213) 892-5200

Attorneys for Plaintiff Isaacson

Susan Talcott Camp*
Alexa Kolbi-Molinas*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
Telephone:  (212) 549-2633
akolbi-molinas@aclu.org
tcamp@aclu.org

Daniel Pochoda (AZ #021979)
Kelly Flood (AZ #019772)
American Civil Liberties Union Foundation
of Arizona
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
dpochoda@acluaz.org

Attorneys for Plaintiffs Clewell and Miller

*Application for admission *pro hac vice* filed

- 11 -

# Exhibit A

Senate Engrossed House Bill

State of Arizona
House of Representatives
Fiftieth Legislature
Second Regular Session
2012

## CHAPTER 250

# HOUSE BILL 2036

### AN ACT

AMENDING SECTIONS 36-449.01, 36-449.03, 36-2151, 36-2152, 36-2153 AND 36-2156, ARIZONA REVISED STATUTES; AMENDING TITLE 36, CHAPTER 20, ARTICLE 1, ARIZONA REVISED STATUTES, BY ADDING SECTIONS 36-2158 AND 36-2159; AMENDING SECTION 36-2163, ARIZONA REVISED STATUTES; RELATING TO ABORTION.

(TEXT OF BILL BEGINS ON NEXT PAGE)

H.B. 2036

1   Be it enacted by the Legislature of the State of Arizona:
2       Section 1.  Section 36-449.01, Arizona Revised Statutes, is amended to
3   read:
4       36-449.01.  Definitions
5       In this article, unless the context otherwise requires:
6       1.  "Abortion" means the use of any means with the intent to terminate
7   a woman's pregnancy for reasons other than to increase the probability of a
8   live birth, to preserve the life or health of the child after a live birth,
9   to terminate an ectopic pregnancy or to remove a dead fetus.  Abortion does
10  not include birth control devices or oral contraceptives.
11      2.  "Abortion clinic" means a facility, other than a hospital, in which
12  five or more first trimester abortions in any month or any second or third
13  trimester abortions are performed.
14      3.  "Director" means the director of the department of health services.
15      4.  "MEDICATION ABORTION" MEANS THE USE OF ANY MEDICATION, DRUG OR
16  OTHER SUBSTANCE THAT IS INTENDED TO CAUSE OR INDUCE AN ABORTION.
17      4.  5.  "Perform"  includes  the  initial  administration  of  any
18  medication, drug or other substance intended to cause or induce an abortion.
19      6.  "SURGICAL ABORTION"  HAS  THE  SAME  MEANING  PRESCRIBED  IN  SECTION
20  36-2151.
21      5.  7.  "Viable fetus"  has  the  same  meaning  prescribed  in  section
22  36-2301.01.
23      Sec. 2.  Section 36-449.03, Arizona Revised Statutes, is amended to
24  read:
25      36-449.03.  Abortion clinics; rules; civil penalties
26      A.  The director shall adopt rules for an abortion clinic's physical
27  facilities.  At a minimum these rules shall prescribe standards for:
28      1.  Adequate  private  space  that  is  specifically  designated  for
29  interviewing, counseling and medical evaluations.
30      2.  Dressing rooms for staff and patients.
31      3.  Appropriate lavatory areas.
32      4.  Areas for preprocedure hand washing.
33      5.  Private procedure rooms.
34      6.  Adequate lighting and ventilation for abortion procedures.
35      7.  Surgical  or  gynecologic  examination  tables  and  other  fixed
36  equipment.
37      8.  Postprocedure  recovery  rooms  that  are  supervised,  staffed  and
38  equipped to meet the patients' needs.
39      9.  Emergency exits to accommodate a stretcher or gurney.
40      10.  Areas for cleaning and sterilizing instruments.
41      11.  Adequate  areas  for  the  secure  storage  of  medical  records  and
42  necessary equipment and supplies.
43      12.  The display in the abortion clinic, in a place that is conspicuous
44  to all patients, of the clinic's current license issued by the department.
45      B.  The director shall adopt rules to prescribe abortion clinic
46  supplies and equipment standards, including supplies and equipment that are

- 1 -

H.B. 2036

1   required to be immediately available for use or in an emergency. At a
2   minimum these rules shall:
3       1. Prescribe required equipment and supplies, including medications,
4   required for the conduct, in an appropriate fashion, of any abortion
5   procedure that the medical staff of the clinic anticipates performing and for
6   monitoring the progress of each patient throughout the procedure and recovery
7   period.
8       2. Require that the number or amount of equipment and supplies at the
9   clinic is adequate at all times to assure sufficient quantities of clean and
10  sterilized durable equipment and supplies to meet the needs of each patient.
11      3. Prescribe required equipment, supplies and medications that shall
12  be available and ready for immediate use in an emergency and requirements for
13  written protocols and procedures to be followed by staff in an emergency,
14  such as the loss of electrical power.
15      4. Prescribe required equipment and supplies for required laboratory
16  tests and requirements for protocols to calibrate and maintain laboratory
17  equipment at the abortion clinic or operated by clinic staff.
18      5. Require ultrasound equipment ~~in those facilities that provide~~
19  ~~abortions after twelve weeks' gestation~~.
20      6. Require that all equipment is safe for the patient and the staff,
21  meets applicable federal standards and is checked annually to ensure safety
22  and appropriate calibration.
23      C. The director shall adopt rules relating to abortion clinic
24  personnel. At a minimum these rules shall require that:
25      1. The abortion clinic designate a medical director of the abortion
26  clinic who is licensed pursuant to title 32, chapter 13, 17 or 29.
27      2. Physicians performing ~~surgery~~ ABORTIONS are licensed pursuant to
28  title 32, chapter 13 or 17, demonstrate competence in the procedure involved
29  and are acceptable to the medical director of the abortion clinic.
30      3. A physician ~~with admitting privileges at an accredited hospital in~~
31  ~~this state~~ is available: ~~.~~
32      (a) FOR A SURGICAL ABORTION WHO HAS ADMITTING PRIVILEGES AT A HEALTH
33  CARE INSTITUTION THAT IS CLASSIFIED BY THE DIRECTOR AS A HOSPITAL PURSUANT TO
34  SECTION 36-405, SUBSECTION B AND THAT IS WITHIN THIRTY MILES OF THE ABORTION
35  CLINIC.
36      (b) FOR A MEDICATION ABORTION WHO HAS ADMITTING PRIVILEGES AT A HEALTH
37  CARE INSTITUTION THAT IS CLASSIFIED BY THE DIRECTOR AS A HOSPITAL PURSUANT TO
38  SECTION 36-405, SUBSECTION B.
39      4. If a physician is not present, a registered nurse, nurse
40  practitioner, licensed practical nurse or ~~physician's~~ PHYSICIAN assistant is
41  present and remains at the clinic when abortions are performed to provide
42  postoperative monitoring and care, OR MONITORING AND CARE AFTER INDUCING A
43  MEDICATION ABORTION, until each patient who had an abortion that day is
44  discharged.

H.B. 2036

1    5.  Surgical assistants receive training in counseling, patient
2  advocacy and the specific responsibilities of the services the surgical
3  assistants provide.
4    6.  Volunteers receive training in the specific responsibilities of the
5  services the volunteers provide, including counseling and patient advocacy as
6  provided in the rules adopted by the director for different types of
7  volunteers based on their responsibilities.
8    D.  The director shall adopt rules relating to the medical screening
9  and evaluation of each abortion clinic patient.  At a minimum these rules
10  shall require:
11    1.  A medical history, including the following:
12    (a)  Reported allergies to medications, antiseptic solutions or latex.
13    (b)  Obstetric and gynecologic history.
14    (c)  Past surgeries.
15    2.  A physical examination, including a bimanual examination estimating
16  uterine size and palpation of the adnexa.
17    3.  The appropriate laboratory tests, including:
18    (a)  ~~For an abortion in which an ultrasound examination is not~~
19  ~~performed before the abortion procedure,~~ Urine or blood tests for pregnancy
20  performed before the abortion procedure.
21    (b)  A test for anemia.
22    (c)  Rh typing, unless reliable written documentation of blood type is
23  available.
24    (d)  Other tests as indicated from the physical examination.
25    4.  An ultrasound evaluation for all patients ~~who elect to have an~~
26  ~~abortion after twelve weeks' gestation~~.  The rules shall require that if a
27  person who is not a physician performs an ultrasound examination, that person
28  shall have documented evidence that the person completed a course in the
29  operation of ultrasound equipment as prescribed in rule.  The physician or
30  other health care professional shall review, at the request of the patient,
31  the ultrasound evaluation results with the patient before the abortion
32  procedure is performed, including the probable gestational age of the fetus.
33    5.  That the physician is responsible for estimating the gestational
34  age of the fetus based on the ultrasound examination and obstetric standards
35  in keeping with established standards of care regarding the estimation of
36  fetal age as defined in rule and shall write the estimate in the patient's
37  medical history.  The physician shall keep original prints of each ultrasound
38  examination of a patient in the patient's medical history file.
39    E.  The director shall adopt rules relating to the abortion procedure.
40  At a minimum these rules shall require:
41    1.  That medical personnel is available to all patients throughout the
42  abortion procedure.
43    2.  Standards for the safe conduct of abortion procedures that conform
44  to obstetric standards in keeping with established standards of care
45  regarding the estimation of fetal age as defined in rule.

H.B. 2036

1    3.   Appropriate use of local anesthesia, analgesia and sedation if
2  ordered by the physician.
3    4.   The use of appropriate precautions, such as the establishment of
4  intravenous access at least for patients undergoing second or third trimester
5  abortions.
6    5.   The use of appropriate monitoring of the vital signs and other
7  defined signs and markers of the patient's status throughout the abortion
8  procedure and during the recovery period until the patient's condition is
9  deemed to be stable in the recovery room.
10   6.   THAT ANY MEDICATION, DRUG OR OTHER SUBSTANCE USED TO INDUCE AN
11  ABORTION IS ADMINISTERED IN COMPLIANCE WITH THE PROTOCOL THAT IS AUTHORIZED
12  BY THE UNITED STATES FOOD AND DRUG ADMINISTRATION AND THAT IS OUTLINED IN THE
13  FINAL PRINTING LABELING INSTRUCTIONS FOR THAT MEDICATION, DRUG OR SUBSTANCE.
14   F.   The director shall adopt rules that prescribe minimum recovery room
15  standards.   At a minimum these rules shall require that:
16   1.   FOR A SURGICAL ABORTION, immediate postprocedure care, OR CARE
17  PROVIDED AFTER INDUCING A MEDICATION ABORTION, consists of observation in a
18  supervised recovery room for as long as the patient's condition warrants.
19   2.   The clinic arrange hospitalization if any complication beyond the
20  management capability of the staff occurs or is suspected.
21   3.   A licensed health professional who is trained in the management of
22  the recovery area and is capable of providing basic cardiopulmonary
23  resuscitation and related emergency procedures remains on the premises of the
24  abortion clinic until all patients are discharged.
25   4.   FOR A SURGICAL ABORTION, a physician with admitting privileges at
26  an accredited hospital in this state A HEALTH CARE INSTITUTION THAT IS
27  CLASSIFIED BY THE DIRECTOR AS A HOSPITAL PURSUANT TO SECTION 36-405,
28  SUBSECTION B AND THAT IS WITHIN THIRTY MILES OF THE ABORTION CLINIC remains
29  on the premises of the abortion clinic until all patients are stable and are
30  ready to leave the recovery room and to facilitate the transfer of emergency
31  cases if hospitalization of the patient or viable fetus is necessary.   A
32  physician shall sign the discharge order and be readily accessible and
33  available until the last patient is discharged.
34   5.   A physician discusses RhO(d) immune globulin with each patient for
35  whom it is indicated and assures it is offered to the patient in the
36  immediate postoperative period or that it will be available to her within
37  seventy-two hours after completion of the abortion procedure.   If the patient
38  refuses, a refusal form approved by the department shall be signed by the
39  patient and a witness and included in the medical record.
40   6.   Written instructions with regard to postabortion coitus, signs of
41  possible problems and general aftercare are given to each patient.   Each
42  patient shall have specific instructions regarding access to medical care for
43  complications, including a telephone number to call for medical emergencies.
44   7.   There is a specified minimum length of time that a patient remains
45  in the recovery room by type of abortion procedure and duration of gestation.

- 4 -

H.B. 2036

1    8.   The physician assures that a licensed health professional from the
2  abortion clinic makes a good faith effort to contact the patient by
3  telephone, with the patient's consent, within twenty-four hours after ~~surgery~~
4  A SURGICAL ABORTION to assess the patient's recovery.
5    9.   Equipment and services are located in the recovery room to provide
6  appropriate emergency resuscitative and life support procedures pending the
7  transfer of the patient or viable fetus to the hospital.
8    G.   The director shall adopt rules that prescribe standards for
9  follow-up visits.  At a minimum these rules shall require that:
10    1.   FOR A SURGICAL ABORTION, a postabortion medical visit is offered
11  and, if requested, scheduled for three weeks after the abortion, including a
12  medical examination and a review of the results of all laboratory tests.  FOR
13  A MEDICATION ABORTION, THE RULES SHALL REQUIRE THAT A POSTABORTION MEDICAL
14  VISIT IS SCHEDULED BETWEEN ONE WEEK AND THREE WEEKS AFTER THE INITIAL DOSE OF
15  A MEDICATION ABORTION TO CONFIRM THE PREGNANCY IS COMPLETELY TERMINATED AND
16  TO ASSESS THE DEGREE OF BLEEDING.
17    2.   A urine pregnancy test is obtained at the time of the follow-up
18  visit to rule out continuing pregnancy.  If a continuing pregnancy is
19  suspected, the patient shall be evaluated and a physician who performs
20  abortions shall be consulted.
21    H.   The director shall adopt rules to prescribe minimum abortion clinic
22  incident reporting.  At a minimum these rules shall require that:
23    1.   The abortion clinic records each incident resulting in a patient's
24  or viable fetus' serious injury occurring at an abortion clinic and shall
25  report them in writing to the department within ten days after the incident.
26  For the purposes of this paragraph, "serious injury" means an injury that
27  occurs at an abortion clinic and that creates a serious risk of substantial
28  impairment of a major body organ AND INCLUDES ANY INJURY OR CONDITION THAT
29  REQUIRES AMBULANCE TRANSPORTATION OF THE PATIENT.
30    2.   If a patient's death occurs, other than a fetal death properly
31  reported pursuant to law, the abortion clinic reports it to the department
32  not later than the next department work day.
33    3.   Incident reports are filed with the department and appropriate
34  professional regulatory boards.
35    I.   THE DIRECTOR SHALL ADOPT RULES RELATING TO ENFORCEMENT OF THIS
36  ARTICLE.  AT A MINIMUM, THESE RULES SHALL REQUIRE THAT:
37    1.   FOR AN ABORTION CLINIC THAT IS NOT IN SUBSTANTIAL COMPLIANCE WITH
38  THIS ARTICLE AND THE RULES ADOPTED PURSUANT TO THIS ARTICLE OR THAT IS IN
39  SUBSTANTIAL COMPLIANCE BUT REFUSES TO CARRY OUT A PLAN OF CORRECTION
40  ACCEPTABLE TO THE DEPARTMENT OF ANY DEFICIENCIES THAT ARE LISTED ON THE
41  DEPARTMENT'S STATE OF DEFICIENCY, THE DEPARTMENT MAY DO ANY OF THE FOLLOWING:
42    (a)   ASSESS A CIVIL PENALTY PURSUANT TO SECTION 36-431.01.
43    (b)   IMPOSE AN INTERMEDIATE SANCTION PURSUANT TO SECTION 36-427.
44    (c)   SUSPEND OR REVOKE A LICENSE PURSUANT TO SECTION 36-427.
45    (d)   DENY A LICENSE.
46    (e)   BRING AN ACTION FOR AN INJUNCTION PURSUANT TO SECTION 36-430.

H.B. 2036

1    2.   IN DETERMINING THE APPROPRIATE ENFORCEMENT ACTION, THE DEPARTMENT
2    CONSIDERS THE THREAT OF THE HEALTH, SAFETY AND WELFARE OF THE ABORTION
3    CLINIC'S PATIENTS OR THE GENERAL PUBLIC, INCLUDING:
4        (a)   WHETHER THE ABORTION CLINIC HAS REPEATED VIOLATIONS OF STATUTES OR
5    RULES.
6        (b)   WHETHER THE ABORTION CLINIC HAS ENGAGED IN A PATTERN OF
7    NONCOMPLIANCE.
8        (c)   THE TYPE, SEVERITY AND NUMBER OF VIOLATIONS.
9        I.   J.   The department shall not release personally identifiable
10   patient or physician information.
11       J.   K.   The rules adopted by the director pursuant to this section do
12   not limit the ability of a physician or other health professional to advise a
13   patient on any health issue.
14       Sec. 3.   Section 36-2151, Arizona Revised Statutes, is amended to read:
15       36-2151.   Definitions
16       In this article, unless the context otherwise requires:
17       1.   "Abortion" means the use of any means to terminate the clinically
18   diagnosable pregnancy of a woman with knowledge that the termination by those
19   means will cause, with reasonable likelihood, the death of the unborn child.
20   Abortion does not include birth control devices, oral contraceptives used to
21   inhibit or prevent ovulation, conception or the implantation of a fertilized
22   ovum in the uterus or the use of any means to increase the probability of a
23   live birth SAVE THE LIFE OR PRESERVE THE HEALTH OF THE UNBORN CHILD, to
24   preserve the life or health of the child after a live birth, to terminate an
25   ectopic pregnancy or to remove a dead fetus.
26       2.   "Auscultation" means the act of listening for sounds made by
27   internal organs of the unborn child, specifically for a heartbeat, using an
28   ultrasound transducer and fetal heart rate monitor.
29       3.   "Conception" means the fusion of a human spermatozoon with a human
30   ovum.
31       4.   "Gestational age" means the age of the unborn child as calculated
32   from the first day of the last menstrual period of the pregnant woman.
33       5.   "Health professional" has the same meaning prescribed in section
34   32-3201.
35       6.   "Medical emergency" means a condition that, on the basis of the
36   physician's good faith clinical judgment, so complicates the medical
37   condition of a pregnant woman as to necessitate the immediate abortion of her
38   pregnancy to avert her death or for which a delay will create serious risk of
39   substantial and irreversible impairment of a major bodily function.
40       7.   "MEDICATION ABORTION" MEANS THE USE OF ANY MEDICATION, DRUG OR
41   OTHER SUBSTANCE THAT IS INTENDED TO CAUSE OR INDUCE AN ABORTION.
42       7.   8.   "Physician" means a person who is licensed pursuant to title
43   32, chapter 13 or 17.
44       8.   9.   "Pregnant" or "pregnancy" means a female reproductive condition
45   of having a developing unborn child in the body and that begins with
46   conception.

1    9.  10.  "Probable gestational age" means the gestational age of the
2 unborn child at the time the abortion is planned to be performed and as
3 determined with reasonable probability by the attending physician.
4    10.  11.  "Surgical abortion" means the use of a surgical instrument or
5 a machine to terminate the clinically diagnosable pregnancy of a woman with
6 knowledge that the termination by those means will cause, with reasonable
7 likelihood, the death of the unborn child.  Surgical abortion does not
8 include the use of any means to increase the probability of a live birth, to
9 preserve the life or health of the child after a live birth, to terminate an
10 ectopic pregnancy or to remove a dead fetus.  Surgical abortion does not
11 include patient care incidental to the procedure.
12    11.  12.  "Ultrasound" means the use of ultrasonic waves for diagnostic
13 or therapeutic purposes to monitor a developing unborn child.
14    12.  13.  "Unborn child" means the offspring of human beings from
15 conception until birth.
16       Sec. 4.  Section 36-2152, Arizona Revised Statutes, is amended to read:
17      36-2152.    Parental consent; exception; hearings; time limits;
18                    violation; classification; civil relief; statute of
19                    limitations
20     A.  In addition to the OTHER requirements of section 36-2153 THIS
21 CHAPTER, a person shall not knowingly perform an abortion on a pregnant
22 unemancipated minor unless the attending physician has secured the written
23 and notarized consent from one of the minor's parents or the minor's guardian
24 or conservator or unless a judge of the superior court authorizes the
25 physician to perform the abortion pursuant to subsection B of this section.
26 Notwithstanding section 41-319, the notarized statement of parental consent
27 and the description of the document or notarial act recorded in the notary
28 journal are confidential and are not public records.
29     B.  A judge of the superior court, on petition or motion, and after an
30 appropriate hearing, shall authorize a physician to perform the abortion if
31 the judge determines that the pregnant minor is mature and capable of giving
32 informed consent to the proposed abortion.  If the judge determines that the
33 pregnant minor is not mature or if the pregnant minor does not claim to be
34 mature, the judge shall determine whether the performance of an abortion on
35 her without the consent from one of her parents or her guardian or
36 conservator would be in her best interests and shall authorize a physician to
37 perform the abortion without consent if the judge concludes that the pregnant
38 minor's best interests would be served.
39     C.  If the pregnant minor claims to be mature at a proceeding held
40 pursuant to subsection B of this section, the minor must prove by clear and
41 convincing evidence that she is sufficiently mature and capable of giving
42 informed consent without consulting her parent or legal guardian based on her
43 experience level, perspective and judgment.  In assessing the pregnant
44 minor's experience level, the court may consider, among other relevant
45 factors, the minor's age and experiences working outside the home, living
46 away from home, traveling on her own, handling personal finances and making

1    other significant decisions.  In assessing the pregnant minor's perspective,
2    the court may consider, among other relevant factors, what steps the minor
3    took to explore her options and the extent to which she considered and
4    weighed the potential consequences of each option.  In assessing the pregnant
5    minor's judgment, the court may consider, among other relevant factors, the
6    minor's conduct since learning of her pregnancy and her intellectual ability
7    to understand her options and to make an informed decision.
8        D.   The pregnant minor may participate in the court proceedings on her
9    own behalf.  The court shall appoint a guardian ad litem for her.  The court
10   shall advise her that she has the right to court appointed counsel and, on
11   her request, shall provide her with counsel unless she appears through
12   private counsel or she knowingly and intelligently waives her right to
13   counsel.
14       E.   Proceedings in the court under this section are confidential and
15   have precedence over other pending matters.  Members of the public shall not
16   inspect, obtain copies of or otherwise have access to records of court
17   proceedings under this section unless authorized by law.  A judge who
18   conducts proceedings under this section shall make in writing specific
19   factual findings and legal conclusions supporting the decision and shall
20   order a confidential record of the evidence to be maintained, including the
21   judge's own findings and conclusions.  The minor may file the petition using
22   a fictitious name.  For purposes of this subsection, public does not include
23   judges, clerks, administrators, professionals or other persons employed by or
24   working under the supervision of the court or employees of other public
25   agencies who are authorized by state or federal rule or law to inspect and
26   copy closed court records.
27       F.   The court shall hold the hearing and shall issue a ruling within
28   forty-eight hours, excluding weekends and holidays, after the petition is
29   filed.  If the court fails to issue a ruling within this time period, the
30   petition is deemed to have been granted and the consent requirement is
31   waived.
32       G.   An expedited confidential appeal is available to a pregnant minor
33   for whom the court denies an order authorizing an abortion without parental
34   consent.  The appellate court shall hold the hearing and issue a ruling
35   within forty-eight hours, excluding weekends and holidays, after the petition
36   for appellate review is filed.  Filing fees are not required of the pregnant
37   minor at either the trial or the appellate level.
38       H.   Parental consent or judicial authorization is not required under
39   this section if either:
40       1.   The pregnant minor certifies to the attending physician that the
41   pregnancy resulted from sexual conduct with a minor by the minor's parent,
42   stepparent, uncle, grandparent, sibling, adoptive parent, legal guardian or
43   foster parent or by a person who lives in the same household with the minor
44   and the minor's mother.  The physician performing the abortion shall report
45   the sexual conduct with a minor to the proper law enforcement officials

H.B. 2036

1   pursuant to section 13-3620 and shall preserve and forward a sample of the
2   fetal tissue to these officials for use in a criminal investigation.
3       2.  The attending physician certifies in the pregnant minor's medical
4   record that, on the basis of the physician's good faith clinical judgment,
5   the pregnant minor has a condition that so complicates her medical condition
6   as to necessitate the immediate abortion of her pregnancy to avert her death
7   or for which a delay will create serious risk of substantial and irreversible
8   impairment of major bodily function.
9       I.  A person who performs an abortion in violation of this section is
10  guilty of a class 1 misdemeanor.  A person is not subject to any liability
11  under this section if the person establishes by written evidence that the
12  person relied on evidence sufficient to convince a careful and prudent person
13  that the representations of the pregnant minor regarding information
14  necessary to comply with this section are true.
15      J.  In addition to other remedies available under the common or
16  statutory law of this state, one or both of the minor's parents or the
17  minor's guardian may bring a civil action in the superior court in the county
18  in which the parents or the guardian resides to obtain appropriate relief for
19  a violation of this section, unless the pregnancy resulted from the criminal
20  conduct of the parent or guardian.  The civil action may be based on a claim
21  that failure to obtain consent was a result of simple negligence, gross
22  negligence, wantonness, wilfulness, intention or any other legal standard of
23  care.  THE CIVIL ACTION MAY BE BROUGHT AGAINST THE PERSON WHO PERFORMS THE
24  ABORTION IN VIOLATION OF THIS SECTION AND ANY PERSON WHO CAUSES, AIDS OR
25  ASSISTS A MINOR TO OBTAIN AN ABORTION WITHOUT MEETING THE REQUIREMENTS OF
26  THIS SECTION.  Relief pursuant to this subsection includes the following:
27      1.  Money damages for all psychological, emotional and physical
28  injuries that result from the violation of this section.
29      2.  Statutory damages in an amount equal to five thousand dollars or
30  three times the cost of the abortion, whichever is greater.
31      3.  Reasonable attorney fees and costs.
32      K.  A civil action brought pursuant to this section must be initiated
33  within six years after the violation occurred.
34      L.  THE CONSENT REQUIRED BY THIS SECTION MUST BE OBTAINED ON A FORM
35  PRESCRIBED BY THE DEPARTMENT OF HEALTH SERVICES.  AT A MINIMUM, THE FORM
36  MUST:
37      1.  LIST THE POSSIBLE MEDICAL RISKS THAT MAY OCCUR WITH ANY SURGICAL,
38  MEDICAL OR DIAGNOSTIC PROCEDURE, INCLUDING THE POTENTIAL FOR INFECTION, BLOOD
39  CLOTS, HEMORRHAGE, ALLERGIC REACTIONS AND DEATH.
40      2.  LIST THE POSSIBLE MEDICAL RISKS THAT MAY OCCUR WITH A SURGICAL
41  ABORTION, INCLUDING HEMORRHAGE, UTERINE PERFORATION, STERILITY, INJURY TO THE
42  BOWEL OR BLADDER, A POSSIBLE HYSTERECTOMY AS A RESULT OF A COMPLICATION OR
43  INJURY DURING THE PROCEDURE AND FAILURE TO REMOVE ALL PRODUCTS OF CONCEPTION
44  THAT MAY RESULT IN AN ADDITIONAL PROCEDURE.
45      3.  LIST THE POSSIBLE MEDICAL RISKS THAT MAY OCCUR WITH A MEDICATION
46  ABORTION, INCLUDING HEMORRHAGE, INFECTION, FAILURE TO REMOVE ALL PRODUCTS OF

- 9 -

H.B. 2036

1    CONCEPTION THAT MAY RESULT IN AN ADDITIONAL PROCEDURE, STERILITY AND THE
2    POSSIBLE CONTINUATION OF THE PREGNANCY.
3        4.  REQUIRE THE PREGNANT MINOR'S AND THE PREGNANT MINOR'S PARENT'S
4    INITIALS ON EACH PAGE OF THE FORM AND A FULL SIGNATURE ON THE FINAL PAGE OF
5    THE FORM.
6        5.  INCLUDE A SPACE FOR THE NOTARY'S SIGNATURE AND SEAL ON THE FINAL
7    PAGE OF THE FORM.
8        M.  THE PHYSICIAN MUST MAINTAIN THE FORM IN THE PREGNANT MINOR'S
9    RECORDS FOR SEVEN YEARS AFTER THE DATE OF THE PROCEDURE OR FIVE YEARS AFTER
10   THE DATE OF THE MINOR'S MATURITY, WHICHEVER IS LONGER.
11       Sec. 5.  Section 36-2153, Arizona Revised Statutes, is amended to read:
12   36-2153.   Informed consent; requirements; information; website;
13              signs; violation; civil relief; statute of
14              limitations
15       A.  An abortion shall not be performed or induced without the voluntary
16   and informed consent of the woman on whom the abortion is to be performed or
17   induced.  Except in the case of a medical emergency AND IN ADDITION TO THE
18   OTHER REQUIREMENTS OF THIS CHAPTER, consent to an abortion is voluntary and
19   informed only if all of the following are true:
20       1.  At least twenty-four hours before the abortion, the physician who
21   is to perform the abortion or the referring physician has informed the woman,
22   orally and in person, of:
23       (a)  The name of the physician who will perform the abortion.
24       (b)  The nature of the proposed procedure or treatment.
25       (c)  The immediate and long-term medical risks associated with the
26   procedure that a reasonable patient would consider material to the decision
27   of whether or not to undergo the abortion.
28       (d)  Alternatives to the procedure or treatment that a reasonable
29   patient would consider material to the decision of whether or not to undergo
30   the abortion.
31       (e)  The probable gestational age of the unborn child at the time the
32   abortion is to be performed.
33       (f)  The probable anatomical and physiological characteristics of the
34   unborn child at the time the abortion is to be performed.
35       (g)  The medical risks associated with carrying the child to term.
36       2.  At least twenty-four hours before the abortion, the physician who
37   is to perform the abortion, the referring physician or a qualified physician,
38   physician assistant, nurse, psychologist or licensed behavioral health
39   professional to whom the responsibility has been delegated by either
40   physician has informed the woman, orally and in person, that:
41       (a)  Medical assistance benefits may be available for prenatal care,
42   childbirth and neonatal care.
43       (b)  The father of the unborn child is liable to assist in the support
44   of the child, even if he has offered to pay for the abortion.  In the case of
45   rape or incest, this information may be omitted.

1     (c)  Public and private agencies and services are available to assist
2 the woman during her pregnancy and after the birth of her child if she
3 chooses not to have an abortion, whether she chooses to keep the child or
4 place the child for adoption.
5     (d)  It is unlawful for any person to coerce a woman to undergo an
6 abortion.
7     (e)  The woman is free to withhold or withdraw her consent to the
8 abortion at any time without affecting her right to future care or treatment
9 and without the loss of any state or federally funded benefits to which she
10 might otherwise be entitled.
11     (f)  THE DEPARTMENT OF HEALTH SERVICES MAINTAINS A WEBSITE THAT
12 DESCRIBES THE UNBORN CHILD AND LISTS THE AGENCIES THAT OFFER ALTERNATIVES TO
13 ABORTION.
14     (g)  THE WOMAN HAS A RIGHT TO REVIEW THE WEBSITE AND THAT A PRINTED
15 COPY OF THE MATERIALS ON THE WEBSITE WILL BE PROVIDED TO HER FREE OF CHARGE
16 IF SHE CHOOSES TO REVIEW THESE MATERIALS.
17     3.  The information in paragraphs 1 and 2 of this subsection is
18 provided to the woman individually and in a private room to protect her
19 privacy and to ensure that the information focuses on her individual
20 circumstances and that she has adequate opportunity to ask questions.
21     4.  The woman certifies in writing before the abortion that the
22 information required to be provided pursuant to paragraphs 1 and 2 of this
23 subsection has been provided.
24     B.  If a medical emergency compels the performance of an abortion, the
25 physician shall inform the woman, before the abortion if possible, of the
26 medical indications supporting the physician's judgment that an abortion is
27 necessary to avert the woman's death or to avert substantial and irreversible
28 impairment of a major bodily function.
29     C.  THE DEPARTMENT OF HEALTH SERVICES SHALL ESTABLISH A WEBSITE WITHIN
30 NINETY DAYS AFTER THE EFFECTIVE DATE OF THIS AMENDMENT TO THIS SECTION AND
31 SHALL ANNUALLY UPDATE THE WEBSITE.  THE WEBSITE MUST INCLUDE A LINK TO A
32 PRINTABLE VERSION OF ALL MATERIALS LISTED ON THE WEBSITE.  THE MATERIALS MUST
33 BE WRITTEN IN AN EASILY UNDERSTOOD MANNER AND PRINTED IN A TYPEFACE THAT IS
34 LARGE ENOUGH TO BE CLEARLY LEGIBLE.  THE WEBSITE MUST INCLUDE ALL OF THE
35 FOLLOWING MATERIALS:
36     1.  INFORMATION THAT IS ORGANIZED GEOGRAPHICALLY BY LOCATION AND THAT
37 IS DESIGNED TO INFORM THE WOMAN ABOUT PUBLIC AND PRIVATE AGENCIES AND
38 SERVICES THAT ARE AVAILABLE TO ASSIST A WOMAN THROUGH PREGNANCY, AT
39 CHILDBIRTH AND WHILE HER CHILD IS DEPENDENT, INCLUDING ADOPTION AGENCIES.
40 THE MATERIALS SHALL INCLUDE A COMPREHENSIVE LIST OF THE AGENCIES, A
41 DESCRIPTION OF THE SERVICES THEY OFFER AND THE MANNER IN WHICH THESE AGENCIES
42 MAY BE CONTACTED, INCLUDING THE AGENCIES' TELEPHONE NUMBERS AND WEBSITE
43 ADDRESSES.
44     2.  INFORMATION ON THE AVAILABILITY OF MEDICAL ASSISTANCE BENEFITS FOR
45 PRENATAL CARE, CHILDBIRTH AND NEONATAL CARE.

H.B. 2036

1      3.  A STATEMENT THAT IT IS UNLAWFUL FOR ANY PERSON TO COERCE A WOMAN TO
2  UNDERGO AN ABORTION.
3      4.  A STATEMENT THAT ANY PHYSICIAN WHO PERFORMS AN ABORTION ON A WOMAN
4  WITHOUT OBTAINING THE WOMAN'S VOLUNTARY AND INFORMED CONSENT OR WITHOUT
5  AFFORDING HER A PRIVATE MEDICAL CONSULTATION MAY BE LIABLE TO THE WOMAN FOR
6  DAMAGES IN A CIVIL ACTION.
7      5.  A STATEMENT THAT THE FATHER OF A CHILD IS LIABLE TO ASSIST IN THE
8  SUPPORT OF THAT CHILD, EVEN IF THE FATHER HAS OFFERED TO PAY FOR AN ABORTION,
9  AND THAT THE LAW ALLOWS ADOPTIVE PARENTS TO PAY COSTS OF PRENATAL CARE,
10  CHILDBIRTH AND NEONATAL CARE.
11      6.  INFORMATION THAT IS DESIGNED TO INFORM THE WOMAN OF THE PROBABLE
12  ANATOMICAL AND PHYSIOLOGICAL CHARACTERISTICS OF THE UNBORN CHILD AT TWO-WEEK
13  GESTATIONAL INCREMENTS FROM FERTILIZATION TO FULL TERM, INCLUDING PICTURES OR
14  DRAWINGS REPRESENTING THE DEVELOPMENT OF UNBORN CHILDREN AT TWO-WEEK
15  GESTATIONAL INCREMENTS AND ANY RELEVANT INFORMATION ON THE POSSIBILITY OF THE
16  UNBORN CHILD'S SURVIVAL.  THE PICTURES OR DRAWINGS MUST CONTAIN THE
17  DIMENSIONS OF THE UNBORN CHILD AND MUST BE REALISTIC AND APPROPRIATE FOR EACH
18  STAGE OF PREGNANCY.  THE INFORMATION PROVIDED PURSUANT TO THIS PARAGRAPH MUST
19  BE OBJECTIVE, NONJUDGMENTAL AND DESIGNED TO CONVEY ONLY ACCURATE SCIENTIFIC
20  INFORMATION ABOUT THE UNBORN CHILD AT THE VARIOUS GESTATIONAL AGES.
21      7.  OBJECTIVE INFORMATION THAT DESCRIBES THE METHODS OF ABORTION
22  PROCEDURES COMMONLY EMPLOYED, THE MEDICAL RISKS COMMONLY ASSOCIATED WITH EACH
23  PROCEDURE, THE POSSIBLE DETRIMENTAL PSYCHOLOGICAL EFFECTS OF ABORTION AND THE
24  MEDICAL RISKS COMMONLY ASSOCIATED WITH CARRYING A CHILD TO TERM.
25      C.  D.  An individual who is not a physician shall not perform a
26  surgical abortion.
27      D.  E.  A person shall not write or communicate a prescription for a
28  drug or drugs to induce an abortion or require or obtain payment for a
29  service provided to a patient who has inquired about an abortion or scheduled
30  an abortion until the expiration of the twenty-four hour reflection period
31  required by subsection A OF THIS SECTION.
32      E.  F.  A person shall not intimidate or coerce in any way any person
33  to obtain an abortion.  A parent, A guardian or any other person shall not
34  coerce a minor to obtain an abortion.  If a minor is denied financial support
35  by the minor's parents, guardians or custodian due to the minor's refusal to
36  have an abortion performed, the minor is deemed emancipated for the purposes
37  of eligibility for public assistance benefits, except that the emancipated
38  minor may not use these benefits to obtain an abortion.
39      G.  AN ABORTION CLINIC AS DEFINED IN SECTION 36-449.01 SHALL
40  CONSPICUOUSLY POST SIGNS THAT ARE VISIBLE TO ALL WHO ENTER THE ABORTION
41  CLINIC, THAT ARE CLEARLY READABLE AND THAT STATE IT IS UNLAWFUL FOR ANY
42  PERSON TO FORCE A WOMAN TO HAVE AN ABORTION AND A WOMAN WHO IS BEING FORCED
43  TO HAVE AN ABORTION HAS THE RIGHT TO CONTACT ANY LOCAL OR STATE LAW
44  ENFORCEMENT OR SOCIAL SERVICE AGENCY TO RECEIVE PROTECTION FROM ANY ACTUAL OR
45  THREATENED PHYSICAL, EMOTIONAL OR PSYCHOLOGICAL ABUSE.  THE SIGNS SHALL BE
46  POSTED IN THE WAITING ROOM, CONSULTATION ROOMS AND PROCEDURE ROOMS.

H.B. 2036

1    H.  A PERSON SHALL NOT REQUIRE A WOMAN TO OBTAIN AN ABORTION AS A
2  PROVISION IN A CONTRACT OR AS A CONDITION OF EMPLOYMENT.
3    F.  I.  A physician who knowingly violates this section commits an act
4  of unprofessional conduct and is subject to license suspension or revocation
5  pursuant to title 32, chapter 13 or 17.
6    G.  J.  In addition to other remedies available under the common or
7  statutory law of this state, any of the following may file a civil action to
8  obtain appropriate relief for a violation of this section:
9    1.  A woman on whom an abortion has been performed without her informed
10  consent as required by this section.
11    2.  The father of the unborn child if married to the mother at the time
12  she received the abortion, unless the pregnancy resulted from the plaintiff's
13  criminal conduct.
14    3.  The maternal grandparents of the unborn child if the mother was not
15  at least eighteen years of age at the time of the abortion, unless the
16  pregnancy resulted from the plaintiff's criminal conduct.
17    H.  K.  A civil action filed pursuant to subsection G  J OF THIS
18  SECTION shall be brought in the superior court in the county in which the
19  woman on whom the abortion was performed resides and may be based on a claim
20  that failure to obtain informed consent was a result of simple negligence,
21  gross negligence, wantonness, wilfulness, intention or any other legal
22  standard of care.  Relief pursuant to subsection G  J OF THIS SECTION
23  includes the following:
24    1.  Money damages for all psychological, emotional and physical
25  injuries resulting from the violation of this section.
26    2.  Statutory damages in an amount equal to five thousand dollars or
27  three times the cost of the abortion, whichever is greater.
28    3.  Reasonable attorney fees and costs.
29    I.  L.  A civil action brought pursuant to this section must be
30  initiated within six years after the violation occurred.
31    Sec. 6.  Section 36-2156, Arizona Revised Statutes, is amended to read:
32    36-2156.  Informed consent; ultrasound required; violation;
33          civil relief; statute of limitations
34    A.  An abortion shall not be performed or induced without the voluntary
35  and informed consent of the woman on whom the abortion is to be performed or
36  induced.  Except in the case of a medical emergency and in addition to the
37  OTHER requirements of section 36-2153 THIS CHAPTER, consent to an abortion is
38  voluntary and informed only if both of the following are true:
39    1.  At least one hour TWENTY-FOUR HOURS before the woman having any
40  part of an abortion performed or induced, and before the administration of
41  any anesthesia or medication in preparation for the abortion on the woman,
42  the physician who is to perform the abortion, the referring physician or a
43  qualified person working in conjunction with either physician shall:
44    (a)  Perform fetal ultrasound imaging and auscultation of fetal heart
45  tone services on the woman undergoing the abortion.

H.B. 2036

1    (b)  Offer to provide the woman with an opportunity to view the active
2    ultrasound image of the unborn child and hear the heartbeat of the unborn
3    child if the heartbeat is audible.  The active ultrasound image must be of a
4    quality consistent with standard medical practice in the community, contain
5    the dimensions of the unborn child and accurately portray the presence of
6    external members and internal organs, if present or viewable, of the unborn
7    child.  The auscultation of fetal heart tone must be of a quality consistent
8    with standard medical practice in the community.
9        (c)  Offer to provide the woman with a simultaneous explanation of what
10   the ultrasound is depicting, including the presence and location of the
11   unborn child within the uterus, the number of unborn children depicted, the
12   dimensions of the unborn child and the presence of any external members and
13   internal organs, if present or viewable.
14       (d)  Offer to provide the patient with a physical picture of the
15   ultrasound image of the unborn child.
16       2.  The woman certifies in writing before the abortion that she has
17   been given the opportunity to view the active ultrasound image and hear the
18   heartbeat of the unborn child if the heartbeat is audible and that she opted
19   to view or not view the active ultrasound image and hear or not hear the
20   heartbeat of the unborn child.
21       B.  A physician who knowingly violates this section commits an act of
22   unprofessional conduct and is subject to license suspension or revocation
23   pursuant to title 32, chapter 13 or 17.
24       C.  In addition to other remedies available under the common or
25   statutory law of this state, any of the following may file a civil action to
26   obtain appropriate relief for a violation of this section:
27       1.  A woman on whom an abortion has been performed without her informed
28   consent as required by this section.
29       2.  The father of the unborn child if married to the mother at the time
30   she received the abortion, unless the pregnancy resulted from the plaintiff's
31   criminal conduct.
32       3.  The maternal grandparents of the unborn child if the mother was not
33   at least eighteen years of age at the time of the abortion, unless the
34   pregnancy resulted from the plaintiff's criminal conduct.
35       D.  A civil action filed pursuant to subsection C of this section shall
36   be brought in the superior court in the county in which the woman on whom the
37   abortion was performed resides and may be based on a claim that failure to
38   obtain informed consent was a result of simple negligence, gross negligence,
39   wantonness, wilfulness, intention or any other legal standard of care.
40   Relief pursuant to subsection C of this section includes any of the
41   following:
42       1.  Money damages for all psychological, emotional and physical
43   injuries resulting from the violation of this section.
44       2.  Statutory damages in an amount equal to five thousand dollars or
45   three times the cost of the abortion, whichever is greater.
46       3.  Reasonable attorney fees and costs.

- 14 -

1      E.  A civil action brought pursuant to this section must be initiated
2  within six years after the violation occurred.
3      Sec. 7.  Title 36, chapter 20, article 1, Arizona Revised Statutes, is
4  amended by adding sections 36-2158 and 36-2159, to read:
5      36-2158.  Informed consent; fetal condition; website; violation;
6               civil relief; statute of limitations; definitions
7      A.  A PERSON SHALL NOT PERFORM OR INDUCE AN ABORTION WITHOUT FIRST
8  OBTAINING THE VOLUNTARY AND INFORMED CONSENT OF THE WOMAN ON WHOM THE
9  ABORTION IS TO BE PERFORMED OR INDUCED.  EXCEPT IN THE CASE OF A MEDICAL
10  EMERGENCY AND IN ADDITION TO THE OTHER REQUIREMENTS OF THIS CHAPTER, CONSENT
11  TO AN ABORTION IS VOLUNTARY AND INFORMED ONLY IF ALL OF THE FOLLOWING OCCUR:
12      1.  IN THE CASE OF A WOMAN SEEKING AN ABORTION OF HER UNBORN CHILD
13  DIAGNOSED WITH A LETHAL FETAL CONDITION, AT LEAST TWENTY-FOUR HOURS BEFORE
14  THE ABORTION THE PHYSICIAN WHO IS TO PERFORM THE ABORTION OR THE REFERRING
15  PHYSICIAN HAS INFORMED THE WOMAN, ORALLY AND IN PERSON, THAT:
16      (a)  PERINATAL HOSPICE SERVICES ARE AVAILABLE AND THE PHYSICIAN HAS
17  OFFERED THIS CARE AS AN ALTERNATIVE TO ABORTION.
18      (b)  THE DEPARTMENT OF HEALTH SERVICES MAINTAINS A WEBSITE THAT LISTS
19  PERINATAL HOSPICE PROGRAMS THAT ARE AVAILABLE BOTH IN THIS STATE AND
20  NATIONALLY AND THAT ARE ORGANIZED GEOGRAPHICALLY BY LOCATION.
21      (c)  THE WOMAN HAS A RIGHT TO REVIEW THE WEBSITE AND THAT A PRINTED
22  COPY OF THE MATERIALS ON THE WEBSITE WILL BE PROVIDED TO HER FREE OF CHARGE
23  IF SHE CHOOSES TO REVIEW THESE MATERIALS.
24      2.  IN THE CASE OF A WOMAN SEEKING AN ABORTION OF HER UNBORN CHILD
25  DIAGNOSED WITH A NONLETHAL FETAL CONDITION, AT LEAST TWENTY-FOUR HOURS BEFORE
26  THE ABORTION THE PHYSICIAN WHO IS TO PERFORM THE ABORTION OR THE REFERRING
27  PHYSICIAN HAS INFORMED THE WOMAN, ORALLY AND IN PERSON:
28      (a)  OF UP-TO-DATE, EVIDENCE-BASED INFORMATION CONCERNING THE RANGE OF
29  OUTCOMES FOR INDIVIDUALS LIVING WITH THE DIAGNOSED CONDITION, INCLUDING
30  PHYSICAL, DEVELOPMENTAL, EDUCATIONAL AND PSYCHOSOCIAL OUTCOMES.
31      (b)  THAT THE DEPARTMENT OF HEALTH SERVICES MAINTAINS A WEBSITE THAT
32  LISTS INFORMATION REGARDING SUPPORT SERVICES, HOTLINES, RESOURCE CENTERS OR
33  CLEARINGHOUSES, NATIONAL AND LOCAL PEER SUPPORT GROUPS AND OTHER EDUCATION
34  AND SUPPORT PROGRAMS AVAILABLE TO ASSIST THE WOMAN AND HER UNBORN CHILD, ANY
35  NATIONAL OR LOCAL REGISTRIES OF FAMILIES WILLING TO ADOPT NEWBORNS WITH THE
36  NONLETHAL FETAL CONDITION AND CONTACT INFORMATION FOR ADOPTION AGENCIES
37  WILLING TO PLACE NEWBORNS WITH THE NONLETHAL FETAL CONDITION WITH FAMILIES
38  WILLING TO ADOPT.
39      (c)  THAT THE WOMAN HAS A RIGHT TO REVIEW THE WEBSITE AND THAT A
40  PRINTED COPY OF THE MATERIALS ON THE WEBSITE WILL BE PROVIDED TO HER FREE OF
41  CHARGE IF SHE CHOOSES TO REVIEW THESE MATERIALS.
42      3.  THE WOMAN CERTIFIES IN WRITING BEFORE THE ABORTION THAT THE
43  INFORMATION REQUIRED TO BE PROVIDED PURSUANT TO THIS SUBSECTION HAS BEEN
44  PROVIDED.
45      B.  THE DEPARTMENT OF HEALTH SERVICES SHALL ESTABLISH A WEBSITE WITHIN
46  NINETY DAYS AFTER THE EFFECTIVE DATE OF THIS SECTION AND SHALL ANNUALLY

H.B. 2036

1  UPDATE THE WEBSITE.  THE WEBSITE SHALL INCLUDE THE INFORMATION PRESCRIBED IN
2  SUBSECTION A, PARAGRAPH 1, SUBDIVISION (b) AND PARAGRAPH 2, SUBDIVISION (b)
3  OF THIS SECTION.
4       C.  A PHYSICIAN WHO KNOWINGLY VIOLATES THIS SECTION COMMITS AN ACT OF
5  UNPROFESSIONAL CONDUCT AND IS SUBJECT TO LICENSE SUSPENSION OR REVOCATION
6  PURSUANT TO TITLE 32, CHAPTER 13 OR 17.
7       D.  IN ADDITION TO OTHER REMEDIES AVAILABLE UNDER THE COMMON OR
8  STATUTORY LAW OF THIS STATE, ANY OF THE FOLLOWING INDIVIDUALS MAY FILE A
9  CIVIL ACTION TO OBTAIN APPROPRIATE RELIEF FOR A VIOLATION OF THIS SECTION:
10      1.  A WOMAN ON WHOM AN ABORTION HAS BEEN PERFORMED WITHOUT HER INFORMED
11 CONSENT AS REQUIRED BY THIS SECTION.
12      2.  THE FATHER OF THE UNBORN CHILD IF THE FATHER IS MARRIED TO THE
13 MOTHER AT THE TIME SHE RECEIVED THE ABORTION, UNLESS THE PREGNANCY RESULTED
14 FROM THE FATHER'S CRIMINAL CONDUCT.
15      3.  THE MATERNAL GRANDPARENTS OF THE UNBORN CHILD IF THE MOTHER WAS NOT
16 AT LEAST EIGHTEEN YEARS OF AGE AT THE TIME OF THE ABORTION, UNLESS THE
17 PREGNANCY RESULTED FROM EITHER OF THE MATERNAL GRANDPARENT'S CRIMINAL
18 CONDUCT.
19      E.  A CIVIL ACTION FILED PURSUANT TO SUBSECTION D OF THIS SECTION SHALL
20 BE BROUGHT IN THE SUPERIOR COURT IN THE COUNTY IN WHICH THE WOMAN ON WHOM THE
21 ABORTION WAS PERFORMED RESIDES AND MAY BE BASED ON A CLAIM THAT FAILURE TO
22 OBTAIN INFORMED CONSENT WAS A RESULT OF SIMPLE NEGLIGENCE, GROSS NEGLIGENCE,
23 WANTONNESS, WILFULNESS, INTENTION OR ANY OTHER LEGAL STANDARD OF CARE.
24 RELIEF PURSUANT TO THIS SUBSECTION INCLUDES THE FOLLOWING:
25      1.  MONEY DAMAGES FOR ALL PSYCHOLOGICAL, EMOTIONAL AND PHYSICAL
26 INJURIES RESULTING FROM THE VIOLATION OF THIS SECTION.
27      2.  STATUTORY DAMAGES IN AN AMOUNT EQUAL TO FIVE THOUSAND DOLLARS OR
28 THREE TIMES THE COST OF THE ABORTION, WHICHEVER IS GREATER.
29      3.  REASONABLE ATTORNEY FEES AND COSTS.
30      F.  A CIVIL ACTION BROUGHT PURSUANT TO THIS SECTION MUST BE INITIATED
31 WITHIN SIX YEARS AFTER THE VIOLATION OCCURRED.
32      G.  FOR THE PURPOSES OF THIS SECTION:
33      1.  "LETHAL FETAL CONDITION" MEANS A FETAL CONDITION THAT IS DIAGNOSED
34 BEFORE BIRTH AND THAT WILL RESULT, WITH REASONABLE CERTAINTY, IN THE DEATH OF
35 THE UNBORN CHILD WITHIN THREE MONTHS AFTER BIRTH.
36      2.  "NONLETHAL FETAL CONDITION" MEANS A FETAL CONDITION THAT IS
37 DIAGNOSED BEFORE BIRTH AND THAT WILL NOT RESULT IN THE DEATH OF THE UNBORN
38 CHILD WITHIN THREE MONTHS AFTER BIRTH BUT MAY RESULT IN PHYSICAL OR MENTAL
39 DISABILITY OR ABNORMALITY.
40      3.  "PERINATAL HOSPICE" MEANS COMPREHENSIVE SUPPORT TO THE PREGNANT
41 WOMAN AND HER FAMILY THAT INCLUDES SUPPORTIVE CARE FROM THE TIME OF DIAGNOSIS
42 THROUGH THE TIME OF BIRTH AND DEATH OF THE INFANT AND THROUGH THE POSTPARTUM
43 PERIOD.  SUPPORTIVE CARE MAY INCLUDE COUNSELING AND MEDICAL CARE BY
44 MATERNAL-FETAL MEDICAL SPECIALISTS, OBSTETRICIANS, NEONATOLOGISTS, ANESTHESIA
45 SPECIALISTS, CLERGY, SOCIAL WORKERS AND SPECIALTY NURSES WHO ARE FOCUSED ON

1 ALLEVIATING FEAR AND ENSURING THAT THE WOMAN AND HER FAMILY EXPERIENCE THE
2 LIFE AND DEATH OF THE CHILD IN A COMFORTABLE AND SUPPORTIVE ENVIRONMENT.
3     36-2159.  Abortion; gestational age; violation; classification;
4             statute of limitations
5     A.  EXCEPT IN A MEDICAL EMERGENCY, A PERSON SHALL NOT PERFORM, INDUCE
6 OR ATTEMPT TO PERFORM OR INDUCE AN ABORTION UNLESS THE PHYSICIAN OR THE
7 REFERRING PHYSICIAN HAS FIRST MADE A DETERMINATION OF THE PROBABLE
8 GESTATIONAL AGE OF THE UNBORN CHILD.  IN MAKING THAT DETERMINATION, THE
9 PHYSICIAN OR REFERRING PHYSICIAN SHALL MAKE ANY INQUIRIES OF THE PREGNANT
10 WOMAN AND PERFORM OR CAUSE TO BE PERFORMED ALL MEDICAL EXAMINATIONS, IMAGING
11 STUDIES AND TESTS AS A REASONABLY PRUDENT PHYSICIAN IN THE COMMUNITY,
12 KNOWLEDGEABLE ABOUT THE MEDICAL FACTS AND CONDITIONS OF BOTH THE WOMAN AND
13 THE UNBORN CHILD INVOLVED, WOULD CONSIDER NECESSARY TO PERFORM AND CONSIDER
14 IN MAKING AN ACCURATE DIAGNOSIS WITH RESPECT TO GESTATIONAL AGE.
15     B.  EXCEPT IN A MEDICAL EMERGENCY, A PERSON SHALL NOT KNOWINGLY
16 PERFORM, INDUCE OR ATTEMPT TO PERFORM OR INDUCE AN ABORTION ON A PREGNANT
17 WOMAN IF THE PROBABLE GESTATIONAL AGE OF HER UNBORN CHILD HAS BEEN DETERMINED
18 TO BE AT LEAST TWENTY WEEKS.
19     C.  A PERSON WHO KNOWINGLY VIOLATES THIS SECTION COMMITS A CLASS 1
20 MISDEMEANOR.
21     D.  A PHYSICIAN WHO KNOWINGLY VIOLATES THIS SECTION COMMITS AN ACT OF
22 UNPROFESSIONAL CONDUCT AND IS SUBJECT TO LICENSE SUSPENSION OR REVOCATION
23 PURSUANT TO TITLE 32, CHAPTER 13 OR 17.
24     E.  IN ADDITION TO OTHER REMEDIES AVAILABLE UNDER THE COMMON OR
25 STATUTORY LAW OF THIS STATE, ANY OF THE FOLLOWING INDIVIDUALS MAY FILE A
26 CIVIL ACTION TO OBTAIN APPROPRIATE RELIEF FOR A VIOLATION OF THIS SECTION:
27     1.  A WOMAN ON WHOM AN ABORTION HAS BEEN PERFORMED IN VIOLATION OF THIS
28 SECTION.
29     2.  THE FATHER OF THE UNBORN CHILD IF THE FATHER IS MARRIED TO THE
30 MOTHER AT THE TIME SHE RECEIVED THE ABORTION, UNLESS THE PREGNANCY RESULTED
31 FROM THE FATHER'S CRIMINAL CONDUCT.
32     3.  THE MATERNAL GRANDPARENTS OF THE UNBORN CHILD IF THE MOTHER WAS NOT
33 AT LEAST EIGHTEEN YEARS OF AGE AT THE TIME OF THE ABORTION, UNLESS THE
34 PREGNANCY RESULTED FROM EITHER OF THE MATERNAL GRANDPARENT'S CRIMINAL
35 CONDUCT.
36     F.  A CIVIL ACTION FILED PURSUANT TO SUBSECTION E OF THIS SECTION SHALL
37 BE BROUGHT IN THE SUPERIOR COURT IN THE COUNTY IN WHICH THE WOMAN ON WHOM THE
38 ABORTION WAS PERFORMED RESIDES.  RELIEF PURSUANT TO THIS SUBSECTION INCLUDES
39 THE FOLLOWING:
40     1.  MONEY DAMAGES FOR ALL PSYCHOLOGICAL, EMOTIONAL AND PHYSICAL
41 INJURIES RESULTING FROM THE VIOLATION OF THIS SECTION.
42     2.  STATUTORY DAMAGES IN AN AMOUNT EQUAL TO FIVE THOUSAND DOLLARS OR
43 THREE TIMES THE COST OF THE ABORTION, WHICHEVER IS GREATER.
44     3. REASONABLE ATTORNEY FEES AND COSTS.
45     G.  A CIVIL ACTION BROUGHT PURSUANT TO THIS SECTION MUST BE INITIATED
46 WITHIN SIX YEARS AFTER THE VIOLATION OCCURRED.

H.B. 2036

```
 1        H.  A WOMAN ON WHOM AN ABORTION IS PERFORMED OR INDUCED IN VIOLATION OF
 2   THIS SECTION MAY NOT BE PROSECUTED UNDER THIS SECTION OR FOR CONSPIRACY TO
 3   COMMIT A VIOLATION OF THIS SECTION.
 4        Sec. 8.  Section 36-2163, Arizona Revised Statutes, is amended to read:
 5        36-2163.  Reports; confidentiality; annual statistical report;
 6                    violations; classification; unprofessional conduct
 7        A.  A report required by this article shall not contain the name of the
 8   woman, common identifiers such as the woman's social security number, driver
 9   license number or insurance carrier identification numbers or any other
10   information or identifiers that would make it possible to identify in any
11   manner or under any circumstances an individual who has obtained or seeks to
12   obtain an abortion.
13        B.  The department of health services shall collect all abortion
14   reports and complication reports and prepare a comprehensive annual
15   statistical report based on the data gathered in the reports.  The
16   statistical report shall not lead to the disclosure of the identity of any
17   person filing a report or about whom a report is filed.  The department shall
18   make the statistical report available on its website and for public
19   inspection and copying.
20        C.  The report prepared by the department pursuant to subsection B of
21   this section shall include statistics from the administrative office of the
22   courts containing the following information:
23        1.  The number of petitions filed pursuant to section 36-2152,
24   subsection B.
25        2.  Of the petitions filed pursuant to section 36-2152, subsection B,
26   the number in which the judge appointed a guardian ad litem or
27   court-appointed counsel for the minor pursuant to section 36-2152,
28   subsection D.
29        3.  Of the petitions filed pursuant to section 36-2152, subsection B,
30   the number in which the judge issued an order authorizing an abortion without
31   parental consent.
32        4.  Of the petitions filed pursuant to section 36-2152, subsection B,
33   the number in which the judge issued an order denying the petition.
34        5.  Of the petitions denied, the number appealed to the court of
35   appeals.
36        6.  The number of those appeals that resulted in the denials being
37   affirmed.
38        7.  The number of those appeals that resulted in the denial being
39   reversed.
40        D.  Except for a statistical report as provided in subsection B of this
41   section, a report filed pursuant to this article is not a public record and
42   is not available for public inspection, except that disclosure may be made to
43   law enforcement officials on an order of a court after application showing
44   good cause.  The court may condition disclosure of the information on any
45   appropriate safeguards it may impose.
```

1      E.  Original copies of all reports filed pursuant to sections 36-2161
2  and 36-2162 shall be available to the Arizona medical board and the Arizona
3  board of osteopathic examiners in medicine and surgery for use in the
4  performance of their official duties.  The Arizona medical board and the
5  Arizona board of osteopathic examiners in medicine and surgery shall maintain
6  the confidentiality of any reports obtained pursuant to this subsection.
7      F.  An employee, agent or contractor of the department who wilfully
8  discloses any information obtained from reports filed pursuant to this
9  article, other than disclosure authorized under subsections B, D and E of
10  this section or as otherwise authorized by law, is guilty of a class 3
11  misdemeanor.
12      G.  A person who is required by this article to file a report, keep any
13  records or supply any information and who wilfully fails to file that report,
14  keep records or supply information as required by law is guilty of
15  unprofessional conduct and is subject to discipline, including license
16  suspension or revocation.
17      H.  A person who wilfully delivers or discloses to the department any
18  report, record or information known by that person to be false commits a
19  class 1 misdemeanor.
20      I.  In addition to the penalties prescribed by subsections F, G and H
21  of this section, an organization or facility that wilfully violates the
22  reporting requirements of this article is subject to discipline by the
23  department including the ~~same~~ civil penalties ~~as~~ prescribed in section ~~36-126~~
24  36-431.01.  IF AN ORGANIZATION OR FACILITY THAT IS LICENSED PURSUANT TO
25  CHAPTER 4, ARTICLE 10 OF THIS TITLE WILFULLY VIOLATES THE REPORTING
26  REQUIREMENTS OF THIS ARTICLE, THE DEPARTMENT MAY ASSESS A CIVIL PENALTY
27  PURSUANT TO SECTION 36-431.01, IMPOSE AN INTERMEDIATE SANCTION PURSUANT TO
28  SECTION 36-427, SUSPEND OR REVOKE A LICENSE PURSUANT TO SECTION 36-427, DENY
29  A LICENSE OR BRING AN ACTION FOR AN INJUNCTION PURSUANT TO SECTION 36-430.
30      Sec. 9.  Findings and purposes
31      A.  The legislature finds that:
32      1.  Abortion can cause serious both short-term and long-term physical
33  and psychological complications for women, including but not limited to
34  uterine perforation, uterine scarring, cervical perforation or other injury,
35  infection, bleeding, hemorrhage, blood clots, failure to actually terminate
36  the pregnancy, incomplete abortion (retained tissue), pelvic inflammatory
37  disease, endometritis, missed ectopic pregnancy, cardiac arrest, respiratory
38  arrest, renal failure, metabolic disorder, shock, embolism, coma, placenta
39  previa in subsequent pregnancies, preterm delivery in subsequent pregnancies,
40  free fluid in the abdomen, organ damage, adverse reactions to anesthesia and
41  other drugs, psychological or emotional complications such as depression,
42  anxiety or sleeping disorders and death.  *See, e.g.*, P.K. Coleman, *Abortion*
43  *and Mental Health: Quantitative Synthesis and Analysis of Research Published*
44  *1995-2009*, Brit. J. of Psychiatry 199:180-86 (2011); P. Shah et al., *Induced*
45  *termination of pregnancy and low birth weight and preterm birth: a systematic*
46  *review and meta-analysis*, B.J.O.G. 116(11):1425 (2009); H.M. Swingle et al.,

H.B. 2036

*Abortion and the Risk of Subsequent Preterm Birth: A Systematic Review and Meta-Analysis*, J. Reprod. Med. 54:95 (2009); R.H. van Oppenraaij et al., *Predicting adverse obstetric outcome after early pregnancy events and complications: a review*, Human Reprod. Update Advance Access 1:1 (Mar. 7, 2009); R.E. Behrman, Preterm Birth: Causes, Consequences, and Prevention 519 (2006); J.M. Thorp et al., *Long-Term Physical and Psychological Health Consequences of Induced Abortion: Review of the Evidence*, Obstet. & Gynecol. Survey 58[1]:67, 75 (2003) J.M. Barrett, *Induced Abortion: A Risk Factor for Placenta Previa*, Am. J. Obstet. & Gynecol. 141:7 (1981).

2.  Abortion has a higher medical risk when the procedure is performed later in pregnancy.  Compared to an abortion at eight weeks of gestation or earlier, the relative risk increases exponentially at higher gestations.  L. Bartlett et al., Risk factors for legal induced abortion-related mortality in the United States, *Obstetrics & Gynecology* 103(4):729-737 (2004).

3.  The incidence of major complications is highest after twenty weeks of gestation.  J. Pregler & A. DeCherney, *Women's Health: Principles and Clinical Practice* 232 (2002).

4.  The risk of death associated with abortion increases with the length of pregnancy, from one death for every one million abortions at or before eight weeks gestation to one per 29,000 abortions at sixteen to twenty weeks and one per 11,000 abortions at twenty-one or more weeks.  L. Bartlett et al., Risk factors for legal induced abortion-related mortality in the United States, *Obstetrics & Gynecology* 103(4):729-737 (2004).  After the first trimester, the risk of hemorrhage from an abortion, in particular, is greater, and the resultant complications may require a hysterectomy, other reparative surgery or a blood transfusion.

5.  The State of Arizona has a legitimate concern for the public's health and safety.  *Williamson v. Lee Optical*, 348 U.S. 483, 486 (1985); *Cohen v. State*, 121 Ariz. 6, 10, 588 P.2d 299, 303 (1978).

6.  The State of Arizona "has legitimate interests from the outset of pregnancy in protecting the health of women." *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 847 (1992); *Planned Parenthood Arizona, Inc. v. American Ass'n of Pro-Life Obstetricians & Gynecologists*, 257 P.3d 181, 194 (Ariz. App. Div. 1, 2011). More specifically, Arizona "has a legitimate concern with the health of women who undergo abortions." *Akron v. Akron Ctr. for Reproductive Health, Inc.*, 462 U.S. 416, 428-29 (1983).

7.  There is substantial and well-documented medical evidence that an unborn child by at least twenty weeks of gestation has the capacity to feel pain during an abortion.  K. Anand, Pain and its effects in the human neonate and fetus, *New England Journal of Medicine*, 317:1321-29 (1987).

8.  The United States Food and Drug Administration approved the drug mifepristone, a first-generation (selective) progesterone receptor modulator ([S]PRM), as an abortion-inducing drug with a specific gestation, dosage and administration protocol.

H.B. 2036

1      9.  As approved by the United States Food and Drug Administration, and
2   as outlined in the drug label, an abortion by mifepristone consists of three
3   200 mg tablets of mifepristone taken orally, followed by two 200 mcg tablets
4   of misopristol taken orally, through forty-nine days LMP (a gestational
5   measurement using the first day of the woman's "last menstrual period" as a
6   marker).  The patient is to return for a follow-up visit in order to confirm
7   that a complete termination of pregnancy has occurred.  *Mifeprex Prescribing*
8   *Information*, Danco Laboratories (July 2005), available at
9   http://www.accessdata.fda.gov/drugsatfda_docs/label/2005/020687s013lbl.pdf;
10  *Mifeprex Medication Guide*, Danco Laboratories (June 8, 2011), available at
11  www.accessdata.fda.gov/drugsatfda_docs/label/2011/020687s014lbl.pdf.
12     10.  The aforementioned treatment requires three office visits by the
13  patient, and the dosages may only be administered in a clinic, medical office
14  or hospital and under supervision of a physician.
15     11.  Court testimony demonstrates that some abortion providers fail to
16  follow the mifepristone protocol as tested and approved by the United States
17  Food and Drug Administration, and as outlined in the drug label.  See, e.g.,
18  *Planned Parenthood v. Goddard*, CV2009-029110, Declaration of Beth Otterstein
19  at 3 (Sept. 10, 2009); *Planned Parenthood v. Horne*, CV2010-030230,
20  Declaration of Paul D. Blumenthal, M.D., M.P.H. (June 29, 2011); and *Planned*
21  *Parenthood Cincinnati Region v. Taft*, 459 F. Supp. 2d 626, 630 n. 7 (S.D. Oh.
22  2006).
23     12.  The use of mifepristone presents significant medical risks to
24  women, including but not limited to C. sordellii bacterial infection, septic
25  shock, toxic shock syndrome, adult respiratory distress syndrome from sepsis,
26  Escheria coli sepsis, group B Streptococcus septicemia, disseminated
27  intravascular coagulopathy (DIC) with heptic and renal failure, severe pelvic
28  infection and massive hemorrhage.
29     13.  Abortion-inducing drugs are associated with an increased risk of
30  complications relative to surgical abortion.  The risk of complications
31  increases with increasing gestational age, and, in the instance of
32  mifepristone, with failure to complete the two-step dosage process.
33     14.  Medical studies have indicated that 1 to 2 out of every 1,000
34  women who undergo mifepristone abortions will require emergency blood
35  transfusion for massive hemorrhage.  By April 30, 2011, the United States
36  Food and Drug Administration reported that at least 339 women required blood
37  transfusions for massive bleeding after mifepristone abortions.  A total of
38  612 United States women have been hospitalized due to complications, and
39  fourteen women in the United States have died following administration of
40  mifepristone.  The majority of reported deaths in the United States were from
41  fatal infection.  Mifepristone U.S. Postmarketing Adverse Events Summary
42  through 04/30/2011, United States Food and Drug Administration, available at
43  www.fda.gov/downloads/Drugs/DrugSafety/PostmarketDrugSafetyInformationfor
44  PatientsandProviders/UCM263353.pdf.  This infection is atypical to the usual
45  presentation of sepsis and may occur without the typical signs of infection,
46  such as fever and tenderness.  This atypical presentation requires that

- 21 -

H.B. 2036

1   mifepristone be dispensed only in a closely supervised clinical setting under
2   the direction of a licensed physician who has the direct ability to counsel
3   the patient regarding the risks, and also to examine the patient prior to and
4   after administration of mifepristone.
5       15.  The  absence  of  proper  follow-up  care  after  mifepristone
6   abortions  has  resulted  in  at  least  58  women  having  undetected
7   ectopic  pregnancies,  including  two  deaths  from  ectopic  rupture.
8   Mifepristone U.S. Postmarketing Adverse Events Summary through 04/30/2011,
9   United   States   Food   and   Drug   Administration,   available   at
10  www.fda.gov/downloads/Drugs/DrugSafety/PostmarketDrugSafetyInformationfor
11  PatientsandProviders/UCM263353.pdf.
12      B.  For these reasons, the legislature's purposes in promulgating this
13  act include to:
14      1.  Prohibit abortions at or after twenty weeks of gestation, except in
15  cases of a medical emergency, based on the documented risks to women's health
16  and the strong medical evidence that unborn children feel pain during an
17  abortion at that gestational age.
18      2.  Protect women from the dangerous and potentially deadly off-label
19  use of abortion-inducing drugs, such as, for example, mifepristone.
20      3.  Ensure that physicians abide by the protocol tested and approved by
21  the United States Food and Drug Administration for such abortion-inducing
22  drugs, as outlined in the drug labels.
23      Sec. 10.  Exemption from rule making
24      For the purposes of this act, the department of health services is
25  exempt from the rule making requirements of title 41, chapter 6, Arizona
26  Revised Statutes, for two years after the effective date of this act.
27      Sec. 11.  Construction
28      This act does not establish or recognize a right to an abortion and
29  does not make lawful an abortion that is currently unlawful.
30      Sec. 12.  Severability
31      If a provision of this act or its application to any person or
32  circumstance is held invalid, the invalidity does not affect other provisions
33  or applications of the act that can be given effect without the invalid
34  provision or application, and to this end the provisions of this act are
35  severable.


APPROVED BY THE GOVERNOR APRIL 12, 2012.

FILED IN THE OFFICE OF THE SECRETARY OF STATE APRIL 12, 2012.